DENNIS C. CROSBY, ADMINISTRATOR, *vs.* DENNIS CROSBY.

G., an administrator, became the guardian of one of the four children and dis-
tributees of his intestate, and, shortly thereafter, he and his co-administrator
made their final return to the Ordinary, stating a balance against themselves,
divided into four equal shares, and payments to the other distributees, or
their guardians, of their respective shares. In none of their returns did
the administrators charge themselves with interest on annual balances;
and, after the final return, G. charged himself, as guardian, with his ward's
share, as stated in said return—he, the ward, being, at that time, thirteen
years of age. The ward arrived at age, and then died; and, on bill by his
administrator against G., for account : *Held*, That the final return to the Or-
dinary did not give currency to the statute of limitations·in G.'s favor, so
as to protect him, by the time which had since elapsed, from his liability to
account for interest on the annual balances before the final return.

*Held, further*, That to this bill a representative of the co-administrator, he being
dead, was not a necessary party.

Though an infant, having a guardian, may, in equity, be barred, as against
strangers, by the statute of limitations, yet, as against the guardian him-
self, he will not be barred, where the equitable claim sought to be enforced
was due by the guardian and another, or by the guardian alone, at the time
of his appointment. It was the duty of the guardian to take care that the
claim was paid, and he cannot set up his own *laches* as an event giving cur-
rency to the statute in his own favor.

G., at his brother's death, took home with him the latter's infant son, then six
years of age. He afterwards administered on his brother's estate, which
was quite small, and, after about seven years, he became the guardian of his
nephew, but manifested no purpose to charge the infant for his board and
clothing, until about two years after he became guardian : *Held*, That the
reasonable inference was, that the board and clothing were given gratuit-
ously by G., until he became guardian, and, consequently, that he could not
charge his ward with such as he had provided before that time.

Charges for board and clothing, in a guardian's account, not allowed, upon evi-
dence that the ward had worked as a laborer for the guardian, and that the
labor was equal to the value of the board and clothing.

BEFORE CARROLL, CH., AT YORK, JUNE, 1867.

Appeal from the Circuit decree of the late Court of Equity.

The plaintiff is the administrator of Daniel W. Crosby, who died
intestate in the latter part of the year 1863, and the defendant was
the guardian of the intestate. The bill was for account.

Allen Crosby, father of the intestate, died in January, 1847,
leaving a small estate, real and personal, and four children. The
defendant and one J. S. Hemphill administered on the estate, and,
in July, 1854, the defendant was appointed guardian of the plain-
tiff's intestate. On the 6th November, 1854, the administrators made
a final return to the Ordinary, stating a balance against themselves
of $706.08, divided into four equal shares of $178.52 each, followed

22

by a receipt from one of the distributees for the sum last mentioned as his share in full, and by receipts from the guardian of two others for the same amount, as in full of their respective shares. There was no receipt for the share of the plaintiff's intestate. Neither in the final, nor in any other return, did the administrators charge themselves with interest upon annual balances.

Plaintiff's intestate was about six years of age at his father's death. The defendant, who was his uncle, took him home with him, and he resided with the defendant until May, 1861, when he entered the army of the Confederate States. He returned in December of the same year, remained at home until February, 1863, when he again entered the army. He died in the service in the fall of that year.

The other facts of the case appear in the report of the Commissioner on the accounts of the defendant. The report is as follows:

"Allen Crosby, the father of the ward, Daniel W. Crosby, died in January, 1847, and in that month the ward went to reside with his uncle, the defendant, Dennis Crosby, who, during the same year, was appointed one of the administrators of Allen Crosby, and, in July, 1854, was appointed the guardian of Daniel W. Crosby. The ward resided with the defendant from January, 1847, until May, 1861, when he entered the army. He returned home in the winter of 1861, and, during the year 1862, attended to, and labored on, the plantation of the defendant. Early in 1863, he returned to the army, and died in the service, some time in the fall of that year. When the defendant was appointed guardian of Daniel W. Crosby, he became chargeable, as guardian, with his ward's share of the personal estate of Allen Crosby, of which defendant was administrator. In the return made by the administrators of Allen Crosby, and filed in the Ordinary's office, November 6, 1854, no charge is made against them for interest on the annual balances; and the guardian, Dennis Crosby, instead of charging himself with $178.52, as amount of ward's share of personal estate in his hands, should have charged himself with $319.31. It also appears that the guardian received, on the 4th October, 1854, the sum of $956.16, being his ward's distributive share of the proceeds of sale of the real estate of his father, Allen Crosby. I, therefore, report the amount of ward's estate, in 1854, in the hands of the guardian, to be $1,275.47. Deducting credits for 1854, and prior years, leaves a balance in the hands of the guardian, on 1st January, 1855, of $1,198.45, being the *corpus* of ward's estate. The de-

fendant had no authority from this Court for breaking in upon the capital of his ward; and it does not appear to me that there was any necessity therefor. He had lived with the defendant from January, 1847, up to October, 1854, when the guardian first charges himself with a portion of ward's estate; and as the necessity, up to that time, (if it existed,) had passed, he could not make it retrospective by subsequent charges. But, apart from this, I am satisfied, from the testimony of the intelligent and highly respectable witnesses examined before me, that the services of the ward, as a laborer for the defendant, from the year 1854 (when he was thirteen years old) up to 1861, and his services on his plantation in 1862, would be sufficient compensation for the board and ·clothing of the ward during the entire period that he resided with defendant. As appears from defendant's vouchers for sums paid for ward's tuition, he was at school only a small portion of the time.

"The entire sum paid for tuition, as shown by the returns, amounts to $63.04; and, when the ward was not at school, he was laboring for the defendant. I have looked to the value of the services, and do not deem it material whether they were compulsory or rendered voluntarily.

"Defendant, however, states in his answer that he never required his ward to work; but he is contradicted by the evidence of his son, Dr. Crosby, a witness for the defence, who says he "was required to work as much as the· other boys." I am satisfied, from the evidence, that, when the ward was not at school, he worked· for defendant, with his negroes, as a common laborer, during every year from 1854 to 1861; and also worked and attended to plantation affairs for him in 1862. It is true the evidence of the witness, Murphy, who has long been an employee of the defendant, represents the services of the ward as voluntary, and worth but little; but the weight of the testimony, I think, clearly justifies a different view, and does not sustain him. In stating the accounts I have allowed the guardian credit for all sums expended for the benefit of the ward, including amounts paid for tuition; and, also, the sum of fifty dollars paid ward in 1862, omitted in defendant's return. It was paid in Confederate money, worth, at that time, in United States currency, $21.90. As the disbursements no year exceeded the interest accruing annually upon the *corpus*, I have simply calculated the interest upon the *corpus* of the estate from January 1, 1855, up to the 17th day of June instant, and deducted therefrom the aggregate credits to which the defendant is entitled,

and carried the balance of interest to the *corpus*, and find the amount due to ward's estate, up to the 17th June instant, to be two thousand and three dollars and three cents. The guardian made but two returns, and it appears from them that his entire expenditures, for the ward, amount to about two hundred dollars, including Ordinary's and attorney's fees; and that he has absorbed the remainder of the ward's estate (except the small balance of $82 37) in charges made for himself. He was the uncle of this orphan—a stranger could scarcely have been less liberal. The marked difference in defendant's treatment of his ward and his own son, of same age, is testified to by disinterested neighbors; and, taken in connection with his absorbing for himself so large a portion of his ward's estate, does not indicate a just and impartial administration of his trust. From the character and concurrent testimony of the witnesses offered by the complainant, I think full justice is done the defendant in the statement I have made of the accounts. One of these witnesses estimates the services of the ward as worth his board and clothing and five or six dollars per month. The most of the witnesses estimate them as worth his board, clothing and tuition during the period he was under defendant's care; and, in addition, his services for 1862 are valued at $150. The value of ward's services I have set off against all charges made for board and clothing. The latter was of cheap and coarse material, not exceeding in value, by defendant's own estimate, $15 per annum. It does not appear that there was any necessity to justify the entrenchment made by the guardian upon the capital of his ward. The interest was more than sufficient to meet the annual expenditure allowed, and leave a balance to be added, as above stated, to the *corpus* of the estate."

The case came up on the report and exceptions made by the defendant.

The decree of His Honor is as follows:

CARROLL, Ch. The first of the exceptions taken to the report depends upon a matter of fact, which was not conceded by the plaintiff, and to establish which no evidence whatever was adduced by the defendant.

The Court has no other alternative than to hold the exception unsustained.

Allen Crosby having died intestate, in January, 1847, the administration of his estate was granted to the defendant and James S.

Hemphill. They made various returns to the Ordinary, of their transactions as such administrators. In each of them the aggregate of payments is deducted from the aggregate of receipts, and the balance thus struck is transferred to the next succeeding return, and set down among the receipts there enumerated. So they proceeded until November 6, 1854, when they rendered to the Ordinary their last return. The net balance against them, thus ascertained, is there divided by four, the number of their intestate's distributees, (his children,) and the share of each is set down at $178.52. From this sum is deducted a partial payment, made to one of the children, William N. Crosby, and his receipt for the remainder, in "full to his share," is appended. Immediately following are receipts from the guardians of two others of the intestate's children, each acknowledging the payment of $178.52, "in full of the shares" of their respective wards—one of the receipts seeming to be an original, and the other a copy, and the latter bearing the date of October 4, 1854.

No mention is there made of the share of Daniel W. Crosby. But the defendant had become his guardian on 4th July, 1854, and, in his first return as such guardian, made October 18, 1856, he charges himself with $178.52, as his ward's share of the personal estate, and as having been received on 6th November, 1854. In ascertaining that sum, the administrators, as has been stated, excused themselves wholly from payment of interest upon the annual balances in their hands. With such interest computed, the share of Daniel W. Crosby, in his father's personal estate, would have amounted, at that date, to $319.31, and with this sum the report, accordingly, charges the defendant.

In his answer, the defendant refers to the amount of the personal assets remaining in the hands of the administrators, according to the statement of their last return, as having been "ascertained by the decree of the Ordinary." It does not appear that the administrators had been cited to account before the Ordinary, at the instance of the distributees, or any of them.

If the act of the Ordinary, in simply receiving and filing the last return of the administrators, ascertained and established the balance there stated to be the real amount due by them, then a like decree had been pronounced by him, upon the receipt and filing of each and every one of their antecedent returns, in respect of the several balances therein respectively set down.

If the defendant and J. S. Hemphill, as guardians, respectively,

of two of the infant distributees, could be regarded as having cited
themselves, in character of administrators, to an account before
the Ordinary, and if, upon such accounting, the Ordinary had ac-
tually decreed the balance struck by them, on 6th November, 1854,
to be the entire residue of the personal assets remaining in their
hands, yet such decree would in no wise have concluded their
wards.—*Miller* vs. *Alexander*, 1 Hill Ch., 27 ; *Sollee* vs. *Croft*, 7
Rich. Eq., 34. This ground of defence, though assumed in the an-
swer, was but faintly urged in the argument.

The defendant, however, excepts to the report upon the ground
that, on the 6th November, 1854, he was not chargeable with more
than $178.52 on account of his ward's share of Allen Crosby's per-
sonal estate. He contends that, on that day, the administrators
rendered a full and final return, ascertaining the net amount of the
personal assets in their hands, and, on the same day, made actual
distribution of the same among the next of kin of their intestate,
or their representatives ; that, by such acts, the administrators
manifested, unequivocally, their intention to discharge themselves
of that trust; that thenceforth all demands against them, as such
administrators, became subject to the operation of the statute of
limitations ; and that the plaintiff's claim against the defendant, in
that character, therefore, is effectually barred.

If the defendant had not been one of the administrators of Al-
len Crosby, and if, in his character of guardian, through oversight,
or mistake, he had received from them, in full payment of his
ward's share in the personalty, a less sum than was justly due, it
might be that, after the lapse of four years, the ward would be
held barred from suit against the administrators, notwithstanding
his minority. In such case his guardian might be regarded as
fairly and substantially representing him. But where, as here, the
same person is both guardian and administrator, the relations of
the parties become essentially changed. Under such circumstances,
the administrator is representing himself, and the infant, practi-
cally, is not represented at all.—*Long* vs. *Cason*, 4 Rich. Eq., 60 ;
*Sollee* vs. *Croft*, 7 Rich. Eq., 36.

It may, perhaps, be inferred that, in November, 1854, the entire
personal assets of Allen Crosby were in the exclusive possession of
the defendant, as the three receipts subjoined to the last return of
the administrators purport, all of them, to be acknowledgments of
payments made by Dennis Crosby alone. His co-administrator,
Hemphill, died in January or February, 1857. Upon that event,

the defendant became sole administrator, and the assets of his intestate unadministered, from and after that date, must be regarded as being in his hands only. Whatever was due by him, as administrator, to himself, as guardian, he must account for in the latter character. It is not deemed requisite, therefore, that the personal representative of his deceased co-administrator should be made a party to this suit.

Though the defendant, in fact, had never received more than $178.52 for his ward's share of Allen Crosby's personal estate, yet, it is apprehended, he must be charged with the sum which he ought to have received upon that account. It was his duty to collect and take into his custody and care the estate of his ward. If he forbore to exact interest from his co-administrator, after his having had his intestate's estate in possession for nearly eight years, it argues such gross *laches* as justly imposes a personal liability upon him. The defendant's second exception cannot be sustained. The remaining exceptions to the report all relate to the credits which the defendant claims for the board and clothing of his ward. There is, undoubtedly, much conflict in the testimony. The Commissioner has had opportunities denied to the Court for estimating its force and weight. It is not perceived that the preponderance of proof is in favor of the defendant, or that the Commissioner has erred in his judgment in rejecting the credits in question.

It is ordered and adjudged, that the several exceptions taken to the report be overruled, and that the report be confirmed, and be made the judgment and decree of the Court.

The defendant appealed, and now moved this Court to reverse or modify the decree, on the grounds:

*First.* Because the Chancellor erred in sustaining the Commissioner's report charging the defendant, on the 6th of November, 1854, the day of the administrators' final return to the Ordinary, with any sum beyond $178.52, on account of his ward's share of the personal estate of Allen Crosby, inasmuch as, on that day, the administrators made a full and final return, and an actual distribution of the assets of their intestate; that, by said acts, the administrators manifested an intention to discharge themselves of their trust as administrators; and the complainant's claim, to open said account, is barred by the statute of limitations; that it was in evidence that the administrators advanced about $1,900, to save the property of the intestate being sacrificed at Sheriff's sale, and it would have

been unjust for the Ordinary to have charged the administrators with any interest on the assets in their hands.

*Second.* Because, if the administrators' final accounting, before the Ordinary, can be properly opened, the personal representative of the defendant's co-administrator, J. S. Hemphill, is an indispensable party in this cause.

*Third.* Because the Chancellor erred in not allowing the defendant credit for boarding and clothing his ward, from the death of his father, in January, 1847, until the 6th of November, 1854, when it was proved that the ward was only about six years old and in very feeble health; and there is no pretext that he did or could have labored for defendant to support himself. It further appeared there was no assets in the administrators' hands, to pay said board and clothing, until the proceeds of the sale of the real estate came into the defendant's hands as guardian.

*Fourth.* Because the defendant is not allowed any credits for board and clothing for his ward during the years 1855, 1856, 1857 and 1858, when it was proved ward was at school the greater part of the time during those years, and could not have rendered services for the defendant equal to the value of his board and clothing; and such witnesses as resided nearest to the defendant and his ward, and had the best opportunity of knowing, positively deny that ward's labor was of any value to the defendant.

*Fifth.* Because the defendant, having boarded and furnished his ward with coarse clothing, from the age of six years until he left for the army, on or about his arriving at the age of twenty-one years, it is unconscionable and unjust to allow the guardian no credits whatever therefor, for the benefit of the administrators of the ward.

*Smith,* for appellant.

*Wilson & Witherspoon,* contra.

March 23, 1870. The opinion of the Court was delivered by

WILLARD, A. J. The complainant, as administrator of Daniel W. Crosby, has brought his bill for an account against Dennis Crosby, the guardian of his intestate. An account was taken before the Commissioner, and a report made, to which exceptions were taken and reported upon by the Commissioner. The exceptions were heard before Chancellor Carroll, and the report of the Commissioner sustained, and defendant's exceptions overruled. To this

decree exceptions have been taken, which will be noticed, in their order, in the grounds of appeal.

The first and second grounds of appeal are based upon the allowance to the complainant of interest on the distributive share of his intestate while in the hands of the defendant, as administrator of the estate of Allen Crosby, the father of the ward. The report of the Commissioner allows complainant interest on annual balances in the hands of defendant, as administrator, not credited in the final accounting of the administrators. The objections urged to the decree, in this respect, are as follows: First, that the accounting of the administrators was full and final, and manifested an intention to discharge themselves of the trust as administrators, and that, no action having been commenced within four years thereafter, the statute of limitations is a bar to the complainant's demand upon that accounting; and, second, that certain advances were made by the administrators, by means of which the property of the intestate, whose estate they administered, was saved for the benefit of the complainant's intestate, as well as for other parties interested in that estate, and that the same should be allowed, by way of an equitable claim, as against complainant's demand for interest on the administrator's balances; and, third, that, if the accounting is to be opened, the co-administrator of the defendant should be represented as a party to the proceeding.

It was held, in *Long* vs. *Cason*, 4 Rich. Eq., 60, that, after a final accounting, and the appointment of a new guardian, as between the old and the new guardian, the statute was a bar, unless proceedings adverse to the accounting were commenced in four years. It was said in that case: "We hold that, as to a chose of the infant, not assignable at law, and peculiarly within the power and duty of the guardian, the *laches* of the guardian, in the absence of collusion, by operation of the statute of limitations, bars the infant as to strangers, and leaves him to a remedy against the guardian."

The doctrine of that case, applied to the facts of the present case, leads to the conclusion that, if the statute bars the remedy against the defendant, in the character of administrator, it is because of his *laches*, in the character of guardian, for which he is accountable to the complainant. The defendant was appointed guardian in 1854, the same year with that of the accounting of the administrators. If the accounting was unjust it was incumbent upon the defendant to rectify it, if the fault was on his part, or to

take measures for its rectification, if the fault was on the part of his co-administrator ; for, during all that period of time, he was the sole legal representative of his ward's interest in his father's estate. He is, therefore, chargeable with *laches*, in the character of guardian, and, as that trust still continues, there being an admitted balance of the ward's estate in the defendant's hands as guardian, the statute cannot be interposed as a bar.—*Riddle* vs. *Riddle,* 5 Rich. Eq., 31.

As to the equitable discount alleged to arise out of certain advances made by the administrators, for the purpose of saving property of their intestate, the naked fact appears in the answer, without any circumstances, there or elsewhere detailed in the case, to show any pecuniary loss to the defendant by reason of any such advance, nor any basis by which the amount of such loss could be ascertained, if any such existed. It is obvious that this claim is advanced as a make-weight, without the means or intention of making it good as an actual demand against the estate. Had it been made duly to appear that the administrators were actually in advance to the estate, a question might have arisen of the allowance of interest on such advances; but the returns of the administrators are inconsistent with such a supposition. The annual balances, on which the Commissioner computed the interest, are those appearing in the administrators' returns, and the defendant has failed to make a case for going behind his returns, and for throwing the burden of restating the accounts of the administration upon the representative of his deceased ward.

As it regards the non-joinder of the representatives of the co-administrator, Hemphill, it is only necessary to say that, as the *laches* of the defendant, as guardian, is the substantial basis of this bill, the co-administrator is an unnecessary party to it. The first and second grounds of appeal must be disallowed.

The remaining grounds of appeal embrace claims, on the part of the defendant, for board and clothing for his ward, covering two distinct periods of time, namely : from 1847, the death of A. Crosby, until 1854, the time when defendant became guardian, and from 1854 to the death of the ward, or a short time previous thereto, in 1863. In regard to the first period of time, he stands in the character of a guardian who has paid to himself a debt claimed to be due to himself as against his ward at the date of assuming the guardianship ; while, as to the latter period of time, he stands as a guardian making claim for advances and expenditures towards

the maintenance of his ward. The additional fact appears, that almost the entire *corpus* of the estate, in addition to income, has thus become expended.

Much evidence was offered, by both parties, bearing upon this part of the case, from which the Commissioner concluded that the services of the ward, as a laborer for the defendant, from the year 1854, when he was thirteen years old, up to 1861, and his services on his plantation in 1862, would be sufficient compensation for the board and clothing of the ward during the entire period that he resided with defendant. The Chancellor acceded to the justness of the Commissioner's conclusions, based upon the evidence; and now, after the questions of fact have received the careful consideration of two experienced minds, favorably situated for weighing the evidence, we are called upon to determine that their conclusions are overborne by a clear weight of undisputed testimony.

So far as it regards the claim for the maintenance of the ward prior to the defendant becoming guardian, the difficulty in the defendant's case is not confined to the question of fact thus determined against him, but is affected by an inference that his act, in furnishing the infant a home and the means of living, was gratuitous.

The law on this subject is well stated by Chancellor Wardlaw, in *Riddle* vs. *Riddle,* (supra.) He says: "Where a father, or near relative of the infant, is trustee, he should show, distinctly, his purpose to charge for maintenance," or it may be inferred to have been gratuitous. This proposition is entitled to the greatest weight in a case like the present, where the claim is made by the father's brother, for the maintenance of a very young child, for seven years previous to any steps being taken to procure guardianship for the infant, and when the uncle subsequently becomes the guardian himself. Has the defendant, then, shown "distinctly his purpose to charge for maintenance," so far as the period previous to the guardianship is concerned?

According to the claim now made by the guardian, at the time of his appointment as guardian, July 4th, 1854, the estate of the infant in his hands, as administrator, amounting to $178, was insufficient to pay the amount of such claim; and, even after the correction of that amount, by the addition of interest on annual balances, the aggregate is less than the amount of the defendant's demand at that date.

Is it to be assumed that, in seeking to become the guardian of

the infant, he stood as a creditor of the infant for an amount greater than the infant's whole estate in hand at that time? It does not appear that at this time, or until two years afterwards, he manifested an intention to charge the infant with his maintenance for the period prior to the guardianship. The first notice of this demand is contained in the return, as guardian, made in 1856. This return credits the ward with a cash balance of $994.90. The following memorandum, introduced at the foot of the sheet containing the return, and after the jurat and signature of the Ordinary, is the only note of it, viz: "Boarding ward from 1847 until January, 1856, to be included in credits, and, also, for clothing." The first evidence of the amount of this indefinite claim being stated, is found in the last return, as guardian, made in 1866, where it is charged at $75 a year from 1847 to 1855, making $600; and interest is charged thereon at $147. Thus, nineteen years elapsed from the commencement of the account against his ward, before it is made the subject of a definite charge.

Equity must assume that the motive of the defendant, in seeking the guardianship of the infant's estate, was to secure to the infant the benefit of that estate, and it is not to be inferred that the real motive was to obtain satisfaction of a demand against the infant's estate that would absorb the whole estate in hand at the time of the application for guardianship. The idea of a gratuitous maintenance is the only one consistent with the assumption that the guardian entered upon his trust under the influence of motives appropriate to that relation.

In *Riddle* vs. *Riddle*, a delay of seven years, under a state of facts remarkably similar to those presented by the present case, was held to afford evidence that the maintenance was intended to be gratuitous. But the delay in the present case, previous to the claim being made definite, was nineteen years.

It is clear that the maintenance of the child, previous to the guardianship, must be considered gratuitous.

In *McDowell* vs. *Caldwell*, (2 McC. Ch., 43,) it is held that when the maintenance of the wards by the guardian, in his own family, originated in an express offer to maintain them free of charge, the guardian could not afterwards interpose a claim for maintenance; that the guardian might have put an end to the arrangement; but, until he did so, it subsisted as a gratuitous undertaking. It is a matter of no importance, whether the intention to give a gratuitous maintenance is established by proof of an express promise or by

inference. It is enough that it is found to exist, and the remark, in *McDowell* vs. *Caldwell*, becomes applicable.

It may, therefore, well be urged that, at the least, the maintenance of the ward ought to be considered as gratuitous down to the date of the return to the Ordinary, which affords the first evidence of an intent to charge the ward's estate for his maintenance; but it is not necessary to rest the case on this proposition. So far as the conclusions of the Commissioner bear upon the period from the granting of guardianship down to the death of the ward, it is clear, that the evidence affords no ground for disturbing such conclusion.

It was held by Chancellor Wardlaw, in *Riddle* vs. *Riddle*, on the authority of *Booth* vs. *Sineath*, (2 Strob. Eq., 31,) that if the trustee exact from the infants all such labor and service as they are capable of rendering, the inference is especially strong that he expects no compensation for board beyond their services. It matters, therefore, little whether the defendant is to be regarded as having assumed the support of his ward for such services as he might be able to render, or as having been paid for such support out of such services. In either case the result is the same—that he should be charged with the estate of his ward coming into his hands, without deduction for board or clothing.

The Circuit decree must be affirmed, and the appeal dismissed.

*Moses*, C. J., concurred.